Opinion issued April 24, 2003





















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-01-01153-CV
____________
 
JANIS N. LOWE, Appellant
 
V.
 
BILL DE LA GARZA, INDIVIDUALLY, AND
BILL DE LA GARZA & ASSOCIATES, Appellees
 

 
 
On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Cause No. 5267*JG98
 

 
 
MEMORANDUM OPINION
          A jury returned a take-nothing judgment in favor of appellees, Bill De La
Garza, and his law firm, De La Garza & Associates, P.C., on all claims brought
against them by appellant, Janis N. Lowe, relating to De La Garza’s legal
representation of Lowe in her prior divorce proceeding.
          Lowe presents two issues on appeal and contends that the trial court erred in
(1) granting De La Garza’s motion for a directed verdict on Lowe’s claims for
violations of the Deceptive Trade Practices–Consumer Protection Act (“DTPA”)


 and
(2) refusing to submit Lowe’s negligence claim to the jury in a broad form question.
          In addition, De La Garza raises a single conditional cross-appeal issue
concerning the trial court’s denial of his motion for leave to file a third-party action
against another of Lowe’s former attorneys.
          We affirm.
Facts and Procedural Background
          In 1985, Lowe retained De La Garza to represent her in divorce proceedings
to end her marriage to Winston Bloodworth. At trial, Lowe testified that, in her initial
meeting with De La Garza, she informed him that she did not intend to contest any
division of the marital assets or seek any community property, but she wanted to be
free of any existing community debts and liabilities; “I didn’t want to own anything. 
I didn’t want to owe anything.”
          The marital assets included a ranch in Real County, known as “the Barksdale
Ranch,” which totaled approximately 1300 acres. Lowe, Bloodworth, and T.A.A.S.,
a privately held corporation they formed and owned together, had signed a $477,000
promissory note with Farm Credit Bank of Texas (“the Bank”)


 to purchase the ranch
in March 1985, a few months before Lowe contacted De La Garza. Lowe testified
that, in her discussions with De La Garza concerning the divorce, she informed him
of this property and the note. De La Garza testified that he was never informed of this
marital debt.
          In October 1985, against the advice of De La Garza, Lowe signed a marital
property settlement agreement. The agreement did not specifically describe the ranch,
but awarded Bloodworth, all of “[t]he remaining community property” not awarded
to Lowe. In addition, Bloodworth agreed to assume “[a]ll indebtedness which
constitutes a lien against property received by him.”
          At the time the marital property settlement agreement was signed, De La Garza
sent a letter to Lowe expressing his concerns about the agreement, which read in part,
as follows:
A settlement proposal has been received in this matter and previously
communicated to you. The decision to settle and under what terms is
yours alone. My obligation is to inform you of alternatives to settlement
so that you may make an informed decision.

          . . . .
 
I cannot recommend that you accept the proposed settlement. The
settlement proposal is unacceptable for several reasons. One (1) reason
alone is the fact that we have not received from your husband, a sworn
Inventory and Appraisement of all assets and debts of yours and your
husband’s estate. . . .
 
Notwithstanding this advice, you have indicated your desire to accept
the settlement offer and I will respect your decision.

          Lowe signed a copy of the letter, acknowledging the advice given by De La
Garza and indicating that she “wish[ed] to proceed with settlement of my case against
the advice of my attorney.” Lowe and Bloodworth were divorced in October 1985.
          In July 1988, the amount of principal and interest owed on the ranch
promissory note totaled $529,024.95. As a result of Bloodworth’s failure to make
payments on the note, the bank sold the ranch at a public auction for $493,240. In
May 1989, the bank sued Lowe, Bloodworth, and T.A.A.S. to recover the deficiency
of $47,930.48 owed on the promissory note. Bloodworth hired attorney Howard L.
Pyland to represent and defend himself, as well as Lowe and T.A.A.S., in the lawsuit,
and Pyland filed an answer in the case on behalf of Lowe.


 The trial court in that case
signed a judgment in favor of the bank for the amount of the deficiency on the note,
plus attorneys’ fees and interest, in January 1990.
          Bloodworth filed bankruptcy in 1996. In May 1997, an attorney representing
the bank sent a letter to Lowe notifying her of the bank’s 1990 judgment against her
and that the amount of the judgment, including interest, totaled $131,259.15. Lowe
subsequently hired attorney James W. Christian to file a bill of review proceeding to
challenge the 1990 judgment. The bill of review proceeding was unsuccessful,


 and
Lowe eventually paid the bank $222,387.63 to satisfy the judgment, plus interest. 
Lowe also paid Christian and his law firm approximately $320,000 in legal fees.
          In the instant lawsuit, Lowe asserted causes of action against De La Garza and
his law firm for legal malpractice, breach of fiduciary duty, breach of contract, breach
of express and implied warranties, and violations of the DTPA. Lowe alleged that,
in their discussions concerning her divorce proceeding, De La Garza had represented
to her that he would obtain a release in her favor from all third-party debts owed on
any marital assets.
          The trial court granted De La Garza’s motion for directed verdict on Lowe’s
claims for breach of fiduciary duty and DTPA violations. The trial court submitted,
and the jury answered, the following questions regarding Lowe’s claims:
QUESTION NO. 1
 
Was there an agreement between Janis Lowe and Bill De La Garza that
Bill De La Garza, in representing her in the divorce action, would get
her released from liability on the debt on the Real County Barksdale
[R]anch?
 
An agreement requires a meeting of the minds of the
parties as to the material terms and conditions of the
agreement.

          ANSWER: YES 

          . . . .

QUESTION NO. 2
 
Was Bill De La Garza’s failure to get Janis Lowe released from the debt
on the Real County Barksdale Ranch excused because of her entering
into the marital property settlement agreement against his advice?
 
Failure to comply by Bill De La Garza is excused if
compliance is waived by Janis Lowe.
 
Waiver is an intentional surrender of a known right or
intentional conduct inconsistent with claiming the right.

          ANSWER: YES 

QUESTION NO. 3
 
Did Bill De La Garza represent to Janis Lowe, in handling her divorce,
that he would try to get her released from all liability on the debt on the
Real County Barksdale Ranch?
 
          ANSWER: YES 

          . . . .

QUESTION NO. 4
 
Was Bill De La Garza negligent in failing to disclose to Janis Lowe after
the divorce that he had not obtained her release from liability on the debt
on the Real County Barksdale [R]anch, which failure to disclose was a
proximate cause of any damages suffered by her?

          ANSWER: NO 

QUESTION NO. 5
 
Was Bill De La Garza negligent in failing to notify [the bank] after the
divorce of Janis Lowe’s change of address . . . which failure to notify
was a proximate cause of any damages suffered by her?

          ANSWER: NO 



          Following the verdict, the trial court signed a take-nothing judgment against
Lowe.
Directed Verdict on DTPA Claims
          In her first issue, Lowe argues that the trial court erred in granting De La
Garza’s motion for directed verdict on her DTPA claims because the evidence
submitted at trial was legally sufficient to support a submission of her DTPA cause
of action to the jury. On appeal, Lowe has expressly narrowed her claim, and she
argues that the evidence supported the submission of a jury question concerning
whether De La Garza violated sections 17.46(b)(5), (b)(7), and 17.50(a)(2) of the
DTPA. Tex. Bus. & Com. Code Ann. §§ 17.46(b)(5), (b)(7), 17.50(a) (Vernon
2002). Specifically, Lowe argues that De La Garza represented to her that his legal
services had characteristics and benefits which they did not have and were of a
particular quality or grade when they were of another, and that he breached express
warranties made to her.
          We review the rendition of a directed verdict in the light most favorable to the
party against whom the verdict was rendered, and we disregard all contrary evidence
and inferences. Qantel Bus. Sys., Inc. v. Custom Controls, 761 S.W.2d 302, 303 (Tex.
1988); Smith v. Aqua-Flo, Inc., 23 S.W.3d 473, 476 (Tex. App.—Houston [1st Dist.]
2000, pet. denied). The movant is entitled to a directed verdict when: (1) a defect in
the opponent’s pleading makes it insufficient to support a judgment; (2) the evidence
conclusively proves the truth of factual propositions that, under the substantive law,
establish the right of the movant to judgment; or (3) the evidence is legally
insufficient to raise an issue of fact on a fact proposition that must be established for
the movant’s opponent to be entitled to judgment. Neller v. Kirschke, 922 S.W.2d
182, 187 (Tex. App.—Houston [1st Dist.] 1995, writ denied).
          Lowe contends in her brief that “[w]hen the Court matches the . . . evidence
(when construed in the light most favorable to Janis), against the elements of [her
DTPA claims] . . . it is plain that legally sufficient evidence supported submission of
Janis’ DTPA causes of action to the jury in this case.”
          Attorneys may be found to have engaged in unconscionable conduct by the way
they represent their clients and may be held liable under the DTPA for deceptive
business practices. Latham v. Castillo, 972 S.W.2d 66, 68-69 (Tex. 1998). However,
evidence of mere breach of contract, without more, does not constitute a “false,
misleading or deceptive act” in violation of the DTPA. Ashford Dev. Inc. v. USLife
Real Estate Servs. Corp., 661 S.W.2d 933, 935 (Tex. 1984).
          As noted above, in question number one, the trial court submitted a breach of
contract question concerning whether De La Garza agreed to obtain a release for
Lowe of the marital property debt on the ranch, which the jury answered “Yes.” 
Lowe did not object to the submission of this question and does not challenge the
sufficiency of the evidence to support the jury’s answer to it. Here, the evidence
presented at trial, and relied on by Lowe in her brief, supported the submission of a
breach of contract question, but was not legally sufficient to support submission of
a question concerning whether De La Garza’s agreement to obtain a release of the
marital debt on the ranch constituted a “false, misleading or deceptive act” under the
DTPA. Moreover, whatever the nature of De La Garza’s representations to Lowe
concerning the characteristics and qualities of his services, Lowe expressly agreed to
settle her divorce proceeding against De La Garza’s advice.
          We hold that, based on the evidence presented, the trial court did not err in
granting De La Garza’s motion for directed verdict on Lowe’s DTPA claims.
          We overrule Lowe’s first issue.
Submission of Negligence Question
          In her second issue, Lowe argues that the trial court erred in submitting her
negligence claim against De La Garza to the jury in “granulated, narrow issues” rather
than in a broad-form negligence question.
          We review Lowe’s contention that the trial court committed error in not
submitting a broad-form negligence question to the jury to determine whether such
error, if any, probably caused the rendition of an improper verdict. See Tex. R. App.
44.1(a) (“No judgment may be reversed on appeal on the ground that the trial court
made an error of law unless the court of appeals concludes that the error complained
of: (1) probably caused the rendition of an improper judgment; or (2) probably
prevented the appellant from properly presenting the case to the court of appeals.”);
Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 388-89 (Tex. 2000).
          With regard to broad-form submission, we note that Rule 277 states, “In all
cases the court shall, whenever feasible, submit the cause upon broad-form
questions.” Tex. R. Civ. P. 277 (emphasis added). The Texas Supreme Court has
recognized that this rule “is not absolute” and that, in certain cases, “it may not be
feasible to submit a single broad-form liability question that incorporates wholly
separate theories of liability.” Casteel, 22 S.W.3d at 390.
          At the charge conference, Lowe proffered the following jury question to the
trial court:
Did the negligence, if any[,] of those named below proximately cause
the occurrence in question?

          Answer “Yes” or “No” for each of the following:

          A. Bill De La Garza or Bill De La Garza and Associates, Inc. _____

          B. Janis Lowe _____

          The trial court marked Lowe’s proposed question “refused” and did not submit
it to the jury.
          Lowe does not challenge the sufficiency of the evidence to support the jury’s
answers to any of the questions. Rather, she argues that, “[w]hat the jury was not
permitted to find, as a result of the granulated negligence submission rather than the
use of a broad form submission, is whether De La Garza’s negligence in failing to
obtain a release of community debt for [Lowe] was a proximate cause of damages to
[Lowe].” In other words, Lowe contends the jury should have been allowed to
determine whether De La Garza acted negligently not only by failing to notify Lowe
that he had not obtained a release of the community debt (see jury question four, 
supra), but also by failing to obtain such a release.
          In its answers to questions one and two of the charge, the jury found that De
La Garza’s breach of his agreement with Lowe to obtain a release of the community
debt on the ranch was excused by Lowe’s conduct. As noted above, Lowe does not
challenge this finding, and we may not set it aside. See Lawson v. Lawson, 828
S.W.2d 158, 161 (Tex. App.—Texarkana 1992, writ denied).
          Lowe argues, essentially, that the jury should have been allowed to find that
De La Garza’s conduct, although excused, was nonetheless negligent and proximately
caused Lowe to incur damages. At common law, negligence consists of: (1) a legal
duty owed by one person to another, (2) a breach of that duty, and (3) damages
proximately caused by that breach. Firestone Steel Prods. Co. v. Barajas, 927
S.W.2d 608, 609 (Tex. 1996).
          However, a jury finding may be rendered immaterial by other findings. 
Spencer v. Eagle Star Ins. Co. of Am., 876 S.W.2d 154, 157 (Tex. 1994). A jury
question is considered immaterial when its answer can be found elsewhere or when
its answer cannot affect the outcome of the verdict. City of Brownsville v. Alvarado,
897 S.W.2d 750, 752 (Tex. 1995). A trial court may properly disregard immaterial
jury findings. Zapalac v. Cain, 39 S.W.3d 414, 417 (Tex. App.—Houston [1st Dist.]
2001, no pet.). Here, the jury found that De La Garza’s failure to fulfill the duty he
owed to Lowe to attempt to obtain a release of the community debt on the ranch,
arising from the parties’ express agreement, was excused. Thus, a jury finding in
favor of Lowe that the same conduct constituted negligence, i.e., a breach of De La
Garza’s duty, would have been immaterial and properly disregarded by the trial court.
          Accordingly, we hold that, based on the jury’s unchallenged answers to the
questions submitted, the trial court’s refusal to submit Lowe’s negligence claim in a
broad-form question did not cause the rendition of an improper verdict.
          We overrule Lowe’s second issue.
Cross-Appeal
          Prior to the entry of the trial court’s judgment, De La Garza filed a motion for
leave to file a third-party action against Lowe’s former attorney, James W. Christian,
and the law firm of Christian & Smith, L.L.P. The trial court denied the motion. In
his brief, De La Garza raises a conditional cross-appeal issue asserting that, should
this Court reverse the judgment of the trial court and remand this matter for trial, it
is his contention that the trial court erred in denying the motion for leave to file the
third-party action. Because we have overruled Lowe’s issues, we do not consider De
La Garza’s cross-appeal issue.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Hedges, Jennings, and Alcala.